Kristin Cox, SBN 030240
Erin Ronstadt, SBN 028362
OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 445-5667 Phone
(602) 761-4443 Fax
kristin@oberpekas.com
erin@oberpekas.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gale Boyes, a single woman, | **No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Banner Health, a plan administrator; Banner Health Master Health and Welfare Benefits Plan, an ERISA benefit plan; and Life Insurance Company of North America, a Cigna company, a plan fiduciary; | |
| Defendants. | |

For her claims against Defendant Banner Health ("Banner"); Defendant Banner Health Master Health and Welfare Benefits Plan (the "Plan"); and Defendant Life Insurance Company of North America ("LINA"), a Cigna company (collectively "Defendants"), Plaintiff Gale Boyes ("Plaintiff" or "Ms. Boyes") alleges as follows:

**JURISDICTION, VENUE, AND PARTIES**

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.      The Plan is a single-employer welfare benefit plan that offers various welfare benefits, including group short and long-term disability ("LTD") benefits.

3.      Banner is the Plan Sponsor, Plan Administrator, and Employer for the Plan.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

4.      The Plan and Banner, a large corporation, have their principal place of business in the State of Arizona.

5.      Banner administered the Plan to its employees, including Ms. Boyes.

6.      Ms. Boyes is a participant and beneficiary of the Plan by virtue of her former employment with Banner.

7.      Ms. Boyes is a single person. She was formerly a resident of Pinal County and is now a resident of Maricopa County, Arizona.

8.      LINA is a licensed insurance company authorized to write LTD insurance policies in Arizona.

9.      LINA is domiciled in the Commonwealth of Pennsylvania and the State of Connecticut and is a wholly owned subsidiary of CG Corporation, a Connecticut holding company. CG Corporation is in turn a wholly owned subsidiary of CIGNA Holdings, Inc., a Delaware holding company. The parent company of CIGNA Holdings, Inc. is Cigna Corporation, a Delaware holding company.

10.     Ms. Boyes is informed and believes that Banner and LINA are either named fiduciaries of the Plan pursuant to 29 U.S.C. § 1133(2); deemed fiduciaries pursuant to 29 U.S.C. § 1002 (21)(A); or designated fiduciaries pursuant to 29 U.S.C. § 1105(c)(1)(B).

11.     LINA had actual or apparent authority to act as a fiduciary on behalf of the Plan.

12.     Defendants are licensed and authorized to do business in Maricopa County, Arizona, and reside or are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

14.    Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

15.    All previous and succeeding paragraphs are incorporated by reference.

### *Cigna's Claim Reserve Buy-Out Program*

16.    Cigna is a global health service organization that provides medical, dental, disability, life and accident insurance and related products and services in the United States and selected international markets.

17.    Cigna's "Group Disability and Life" segment provides insurance products and related services for group short and LTD insurance, group life insurance, and accident and specialty insurance. These products and services are provided by subsidiaries of Cigna Corporation, including LINA.

18.    According to Cigna's 2012 Annual Report, the majority of Cigna's products are offered to employers, including sponsors of ERISA employee benefits plans. Cigna represents itself as an industry leader in returning employees to work quickly. Cigna's Group Disability and Life programs are designed to help improve employee productivity and lower employers' overall absence costs.

19.    The majority of products and services provided through Cigna's Group Disability and Life segment are fully insured, which means that Cigna assumes the risk for any claims and/or costs that arise under the issued disability policy.

20.    In addition to its fully insured disability products, Cigna and its subsidiaries, including LINA, also contract with employers with self-funded disability plans. In exchange for service fees, Cigna administers claims and performs other plan related services. The employer, however, remains responsible for paying any claims under the plan.

21.    On information and belief, in an effort to expand its disability product line and to capture self-funded claims, Cigna and its subsidiaries, including LINA, also

-3-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ  85012
(602) 277-1745

market and sell LTD insurance policies to employers through its Claim Reserve Buy-Out Program (the "RBO Program").

22.    On information and belief, under Cigna's RBO Program, Cigna and its subsidiaries, including LINA, acquire blocks of open disability claims from employers under self-funded plans. In exchange for a fixed payment or premium, Cigna insures and assumes liability for the management and payment of those claims moving forward.

23.    Cigna markets its RBO Program to employers as an alternative to self-funding, whereby employers are able to eliminate the compliance issues and claim risks associated with managing and funding their own disability programs.

24.    In its marketing materials to employers, Cigna boasts the many advantages of participation in its RBO Program. Cigna advertises the following benefits for the employer: the ability to protect against claims volatility and adverse economic events, the ability to avoid the risks associated with reserve funding, favorable tax deductions for the buy-out price, and maintaining strong employee relations by helping to avoid benefit claim lawsuits.

25.    In its marketing materials, Cigna also advertises its success in shortening the lives of disability claims. Under its RBO Program, Cigna claims that nearly 10 percent of LTD claims showed shorter durations.

***Banner's Transition to a Fully Insured Plan under Cigna's RBO Program***

26.    In 2001, Banner established the Banner Health Master Health and Welfare Benefits Plan, No. 501, for the benefit of its employees.

27.    Initially, LTD benefits under the Plan were self-funded by Banner and paid from its general assets.

28.    However, beginning on October 1, 2012, Banner converted its LTD benefit program to a fully insured program through LINA. With respect to these benefits, the Plan transitioned from a self-funded and self-administered plan to a fully insured plan.

29.     On information and belief, Banner entered into two separate insurance contracts with LINA in 2012 to provide LTD coverage under the Plan: Group Policy No. LK-980211 and Group Policy No. RBO-030026 (collectively the "Policies").

30.     On information and belief, Group Policy No. LK-980211 insures LTD claims made on or after October 1, 2012 by Banner employees.

31.     On information and belief, Group Policy No. RBO-030036 (the "RBO Policy") insures existing LTD claims made and approved by Banner prior to October 1, 2012.

32.     Ms. Boyes is informed and believes that the RBO Policy was issued to Banner under Cigna's RBO Program.

33.     In exchange for premiums from Banner, LINA fully insured all claims made under the Policies and assumed financial liability for said claims.

34.     Ms. Boyes is informed and believes that Banner paid LINA a $14,022,000 premium for the RBO Policy to accept all of its open and existing claims, which were previously funded by Banner.

35.     On information and belief, the RBO Policy provides LTD coverage to all "Covered Person[s]" under the policy.

36.     On information and belief, the RBO Policy defines a Covered Person as a participant in the Plan who has been determined to be totally disabled and to qualify for benefits under the Plan, and who is listed in Exhibit B.

37.     On information and belief, as the named policyholder of the RBO Policy, Banner agreed to provide LINA with Exhibit B, which it represented and warranted to be an accurate and complete list of persons who had reported claims for benefits to the Plan Administrator, as of the effective date of the Policy, and whose claims for benefits under the Plan had not been terminated.

***Ms. Boyes' Claim for LTD Benefits Under the Plan***

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite1230
Phoenix, AZ  85012
(602) 277-1745

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

38.     Ms. Boyes began working for Banner on or about December 6, 1982. By the end of her employment on January 12, 2003, she was working as a Charge Nurse supervising other nurses. Ms. Boyes dedicated over 20 years of service to Banner before leaving due to disability.

39.     Ms. Boyes has suffered from fibromyalgia for over 15 years. The pain began while she was still employed with Banner. Despite her attempts to work, the pain increased and prompted Ms. Boyes to apply for disability benefits. She continues to have generalized muscle pain, myalgia, fatigue, low back and leg pain, stiffness, weakness, and depression.

40.     In addition to her fibromyalgia, Ms. Boyes has increased pain in her shoulders and knees. Despite multiple surgeries, including left rotator cuff repair surgery and total knee replacements in both knees, she continues to have significant pain and decreased range of motion.

41.     Ms. Boyes worked until she could no longer do so and sought disability benefits based on her inability to work. Her last day of work with Banner was on January 12, 2003.

42.     After her receipt of short-term disability ("STD") benefits, Ms. Boyes was approved for LTD benefits effective July 21, 2003. She received them for over ten years through December 10, 2013. During this time, her claim had been managed by various entities, including but not limited to, Disability Management Alternatives, Banner Health/Northern Trust, and LINA.

43.     In a letter dated August 25, 2003, Ms. Boyes was advised that her claim for LTD benefits had been approved by the Disability Department at Banner. The letter advised that benefits checks would be sent at the beginning of the month and would be issued by the Northern Trust Company, which was the bank that handled Banner's LTD Trust at the time. Ms. Boyes was also informed that the maximum period of time that she could receive LTD benefits was through August 26, 2023.

-6-

44.     Beginning on October 1, 2012 and pursuant to its arrangement under the RBO Policy, LINA began administering and processing LTD claims, including Ms. Boyes.

45.     On September 13, 2012, a LTD claim was initiated for Ms. Boyes. Her claim was marked as a "TAKEOVER CLAIM/RBO3006."

46.     Ms. Boyes' claim was assigned to Jeffrey Smith, a "Settlement Specialist" for Cigna Group Insurance.

47.     On or about October 1, 2012, Mr. Smith initiated a task to issue Ms. Boyes' benefits checks for 10/01, 11/06 and 12/18 with instruction to "set rep pay."

48.     Over the next year, LINA requested medical records and documentation from Ms. Boyes' treating providers. Ms. Boyes' claim was reassigned to multiple claims managers, including but not limited to, Heather Zapf and Deanna Jessup.

49.     During this time, LINA paid Ms. Boyes her LTD benefits without reservation.

50.     Finally, on or about November 22, 2013, Ms. Boyes' claim was referred to Linda Price for a Nurse Case Manager ("NCM") staffing.

51.     On November 26, 2013, Ms. Price reviewed Ms. Boyes' claim. Based on her review, she noted:

> **Comments**
> staffing for LTD, claim is past AO [Any Occupation], customer is oow [out of work] for fibro and L shoulder, treating with PMR and Ortho, Thomas, PMR PAA [Physical Ability Assessment] on 11/20/13 documents occassionally [sic] for all functions, PAA from AP Thomas on 10/31/13 documents able to lift up to 10 lbs. PCP-Payne will not fill out PAA but is restricting, Medical does not support the PAA from PMR as evidenced by OVN w/ PMR, 11/21/13 documents no functional impairments on exam, OVN 10/16/13 documents on exam no functional impairments, OVN with AP Thomas orhto [sic] on 9/3/13 documents on exam fowared [sic] wlevation [sic] to apporx [sic] 140 degress of L shoulder, has excellent strength with testing on rotator cuff musculature some tightness is noted wiht [sic] ehte [sic] extremes of abd and ER., ***Function unclear*** Ncm to escalate. LP Rn Bsn.

-7-

(emphasis added)

52.     Ms. Price improperly summarized Ms. Boyes' medical records. For instance, with respect to Dr. Sahai's November 21, 2013 office visit note, impairment was documented on examination including, but not limited to, diffuse tenderness to palpation above and below the waist, tenderness to palpation at the anterior shoulder girdles and bicipital grove, positive shoulder impingement signs and positive Hawkin's maneuver. Contrary to Ms. Price's summary, Ms. Boyes' functional impairments were documented on exam and substantiated the restrictions and limitations outlined in Dr. Sahai's November 20, 2013 Physical Ability Assessment (the "PAA").

53.     In the PAA, which was a form provided by LINA, Dr. Sahai provided her assessment of Ms. Boyes' "physical abilities" based on Ms. Boyes' complaints and her personal observation, examination and functional assessment of Ms. Boyes. Dr. Sahai advised that in an eight-hour work day, Ms. Boyes could only tolerate the following activities for the specified durations: sitting, standing and walking no more than two and a half hours per day.

54.     After her review, Ms. Price spoke with Ms. Boyes over the phone. Ms. Boyes clarified her functional limitations, which were noted by Ms. Price:

**Call Summary**
11/26/13- The customer is a 55yr old female oow for fibromyalgia, DM and L shoulder repair on 7/22/13…The customer states that she had both knees replaced one and the other 3 yrs later. The customer had her R shoulder repaired a long time ago, this is her second surgery on her L shoulder. The customer states that she has difficulty with sitting, standing, and walking she has trouble with her calfs [sic] she is unable to walk for a long time her calfs [sic] will start to spasm. The customer states that if she sits for a long time she will have a hard time standing up straight… The customer states that her sister lives with her and she does the cleaning, cooking and shopping…The customer states that she has trouble getting her clothes on, bending over to put on socks or pulling up her paints… The customer states she is obsessive compulsive disorder, depression, along with fibromyalgia. The customer is currently on Depakote, Effexor Trazodone, Theoretic, TRICOR, Prednisone, Coumadin, Omeprazole, Lisinopril, Metformin, Glipizide, Ropinirole Hydroxyzine, Simvastatin, Lopid, Cyclobenzaprine, gabapentin, Salsalate, Vicodine…

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ  85012
(602) 277-1745

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

55.     On December 5, 2013, Ms. Price reviewed Ms. Boyes' claim for a second time. Because she had not yet received a response from Dr. Sahai, she used the medical information on file to make her recommendation. As part of her assessment, Ms. Price noted that no other products were associated with the claim. Ms. Price concluded, "Medical does not support the R/Ls from PAA dated 11/20/13 from AP-Sahai, pain management as evidenced by the following. There is reported pain by the customer due to a diagnosis of fibromyalgia however that is [sic] no measurable functional impairments documented by AP-Sahai due to her fibromyalgia. There are no diagnostic studies on file to support the diagnosis for fibromyalgia. Ncm will staff claim with MD…"

56.     That same day, Ms. Boyes' claim was referred to LINA's Associate Medical Director ("AMD"), Paul Seiferth, M.D., for further staffing.

57.     On information and belief, Dr. Seiferth received his medical degree in 1982 from the Autonomous University of Guadalajara School of Medicine. After his internship and residency in New York and Pennsylvania, he worked as an Emergency Room Staff Physician for various medical establishments in Pennsylvania.

58.     On information and belief, Dr. Seiferth began working for LINA as an AMD or Lead Medical Director in 2003. Ms. Boyes is informed and believes that Dr. Seiferth is an employee of LINA and draws a substantial salary for his employment.

59.     After reviewing Ms. Boyes' claim, Dr. Seiferth concluded that her restrictions and limitations were not supported. Dr. Seiferth failed to provide any explanation beyond a two-sentence assessment. Dr. Seiferth's assessment was conclusory and did not provide substantial support for the termination of Ms. Boyes' LTD benefits. His summary of only two office visit notes from Drs. Sahai and Thomas omitted favorable information, which supported Ms. Boyes' disability, including diffuse tenderness above and below her waist and continued range of motion issues with her shoulder.

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

60.   On or about December 6, 2013, Ms. Boyes' claim was referred to vocational rehabilitation counselor ("VRC"), Eric Moyer, for a transferrable skills analysis ("TSA"). Mr. Moyer was asked to complete a TSA to determine Ms. Boyes' transferable work skills and to determine whether there were transferable occupations based on her prior work history, education and restrictions and limitations.

61.   In a December 6, 2013 email, Mr. Moyer was notified LINA did not have a job description on file for Ms. Boyes. The claims manager, Deanna Jessup, volunteered to request one from Banner. Mr. Moyer declined Ms. Jessup's offer stating, "As for the JD, I don't think it's necessary. She was a nurse. That's about as standard an occupation as there is, so it shouldn't be a problem."

62.   On December 10, 2013, Mr. Moyer completed the TSA. Ms. Boyes' transferable skills were purportedly based on Dr. Desai's PAA. In his report, Mr. Moyer stated, "[t]he analysis of transferability is based on PAA completed by Dr. Sahai dated 11/20/2013. Per PAA, Ms. Boyes is able to sit, stand and walk occasionally."

63.   Based on her prior education and training, Mr. Moyer concluded that Ms. Boyes had the following transferable skills: applying technical knowledge, common sense and special medical skills to care for sick or handicapped people; instructing, planning and directing work of others; keeping accurate records; and distinguishing shapes, forms and colors.

64.   Based on Ms. Boyes' transferable skills, Mr. Moyer identified four occupations that she could purportedly perform based on the Queen Creek labor market. The occupations he found included: Surveillance-System Monitor, Information Clerk, Cardiac Monitor Technician, and Gate Guard. These occupations had a sedentary and light work strength demand, and required "sitting most of the time" under the Dictionary of Occupational Titles ("DOT") framework used by LINA.

65.   The occupational alternatives that Mr. Moyer found were not consistent with Dr. Sahai's PAA. Based on Dr. Sahai's PAA, Ms. Boyes had a less than sedentary

level of function. She could only sit "*occasionally*," which was defined by LINA as between zero (0) to two and a half hours (2.5) hours of an eight-hour workday.

66.     The transferable skills and the occupational alternatives that were previously found by Mr. Moyer are questionable. Ms. Boyes has an impressive employment history; she worked as a Head Nurse for several years prior to her disability. The transferable skills and occupational alternatives identified by Mr. Moyer are not representative of Ms. Boyes experience, training, or education. For instance, given Ms. Boyes' background, it is elusive as to how the occupation of a "Gate Guard" is in line with her past vocational experiences.

67.     On December 10, 2013, Ms. Jessup recommended the closure of Ms. Boyes' claim based on Dr. Seiferth's AMD assessment and Mr. Moyer's TSA.

68.     Ms. Boyes' claim was then referred to Senior Claim Manager ("SCM"), William Smith, for a "Second Eye Review." He agreed with Ms. Jessup's decision to deny further benefits and concluded that she had "appropriately reviewed with NCM, MD and VRC."

69.     Despite having medical evidence supporting her continuing eligibility, LINA terminated Ms. Boyes' LTD benefits in a letter dated December 10, 2013 concluding that she was no longer Disabled (the "First Denial").

70.     Shortly after the First Denial, LINA received a responsive letter from Dr. Desai to Ms. Price's faxed questions. Dr. Desai reported that Ms. Boyes was unable to frequently sit even with an allowance for a change in position for comfort, and was unable to frequently reach or perform fine manipulation or firm grasping. Dr. Desai noted that Ms. Boyes' pain was exacerbated with increased frequency of activities.

71.     Despite this, Ms. Price determined that the new medical did not impact the prior recommendation. While she admitted that there were complaints of tenderness and pain, she concluded that there were no functional impairments documented on exam caused by the pain.

-11-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

72.     As a result of Ms. Price's recommendation, Ms. Boyes' claim remained closed. In a letter dated December 13, 2013, LINA advised that Dr. Sahai's response did not otherwise change its prior decision.

73.     In a letter dated December 31, 2013, Ms. Boyes appealed LINA's adverse determination (the "First Appeal").

74.     LINA acknowledged receipt of Ms. Boyes' First Appeal in a letter dated January 14, 2014.

75.     Ms. Boyes' claim was referred to Appeal Specialist, Melissa Graham.

76.     On February 7, 2014, LINA received a supporting letter from Dr. Desai dated December 30, 2013. In that letter, Dr. Desai stated:

> Ms. Boyes is a 55-year-old female who has been under my care for pain management for several years. The patient has diagnoses of chronic pain syndrome, fibromyalgia, sciatica, and rotator cuff injuries status post repair. The patient is on chronic opioid medications in the form of hydrocodone/acetaminophen 10/325 for her pain management. She is unable to perform any work activities of any kind. She has been on disability for 12 years. The patient has polyarticular pain, also related to end-stage osteoarthritis and status post knee replacements. The patient cannot perform any lower extremity activities due to her sciatica and lower extremity osteoarthritis. She is unable to perform upper extremity activities due to polyarticular osteoarthritis and rotator cuff injuries. She cannot perform any type of lifting greater than 10 pounds on rare occasions, but no repetitive upper extremity activities. She cannot do desk work or typing due to her fibromyalgia and her arthritis and rotator cuff injuries. She is on medications that can impair cognition and concentration. She should not be performing activities that require any long-term attention.

77.     On or about February 19, 2014, Ms. Graham referred Ms. Boyes' claim for a Peer Review. The specialty requested was Occupational Health. The stated rationale for the Peer Review was "Conflicting Medical Information."

78.     Ms. Boyes' claim was referred to Professional Disability Associates ("PDA") for a Peer Review.

79.    PDA advertises itself as the leading provider of independent medical peer reviews in the disability insurance industry. PDA boasts a full range of board certified medical specialists with over 120 disability-trained physicians and nurses.

80.    PDA's stated mission is to be the premier provider of specialty risk management services in the industry and to improve its client's risk management capabilities. PDA fulfills this mission by providing a consultative approach that supports its clients in attaining their business objectives.

81.    According to PDA's website, "7 of the top 10 disability insurers in America are current clients."

82.    PDA assigned Ms. Boyes' claim to Medical Consultant, Dr. Joseph Braun.

83.    On information and belief, Dr. Braun began working for PDA as a Peer Reviewer and Medical Legal Analyst in June 2013. Prior to that, he managed his own company, Braun Professional Enterprises, providing utilization review arbitration, disability medical evaluations, and federal workers' compensation services. His prior work history includes serving as a Medical Director for another disability insurer, Aetna, and heading its disability medical evaluations. He has also worked as a Medical Director for Monsanto and UnitedHealthcare.

84.    Dr. Braun completed his PDA Medical File Review on March 14, 2014.

85.    The large majority of Dr. Braun's report is focused on old medical records and completely ignores the limitations set forth by Drs. Sahai and Payne, whom he spoke with separately over the phone as part of the Peer Review.

86.    During the teleconference, Drs. Sahai and Payne unequivocally maintained that Ms. Boyes could not perform sedentary work and had regressed. Dr. Braun's call summaries are provided in relevant part below:

Dr. Sahai PMR, 480-398-1940 AZ

I spoke with Dr. Sahai on 3/10/14. He [sic] stated she saw the claimant last month. His [sic] impression is that claimant is declining… When asked about the

ability to perform a sedentary job, Physician stated claimant would not be able to do sedentary work because of pain that would not allow sitting. Furthermore she is on cognitive impairing medications.

Dr. Payne, PCP, 480-543-6680

I spoke with Dr. Payne on 3/11/14. He stated he primarily treats the claimant for her diabetes mellitus which has gotten worse. Claimant has just been started on insulin. He stated the claimant does have some neuropathy but no other end organ damage. Claimant also has hemochromatosis. When asked, he stated he felt that claimant would have difficulty performing in a sedentary occupation because of her shoulders…

87.     Without having ever evaluated Ms. Boyes in-person, Dr. Braun proposed restrictions that he thought were more appropriate. For instance, Dr. Braun opined:

 … the claimant is capable of exerting 20 pounds occasionally with the left shoulder and certainly so with the right shoulder. This is based on the risk of re injury to the shoulder only. No limitations/restrictions are supported as to sitting except that claimant has polycythemia vera and hemochromatosis and is on Coumadin. This would require breaks every 1 hour to change positions on a risk basis. The claimant has no condition that prevents standing and walking occassionally.

88.     The proposed restrictions listed by Dr. Braun are arbitrary, capricious, and unsupported by the medical evidence. His review should not have been considered over the weight of Ms. Boyes' treating providers.

89.     Dr. Braun unreasonably faulted Ms. Boyes for having the ability to advocate for herself. In his report, he stated, "Claimant was capable of handwriting a 5 page appeal. Therefore other limitations on the use of the upper extremities are not supported." Ms. Boyes' ability to write a five-page appeal letter has no bearing on her ability to perform Any Occupation consistently.

90.     On March 20, 2014, Ms. Graham referred Ms. Boyes' claim for second vocational review. The review was assigned to VRC, Vincent Engel. Mr. Engel was asked to review Mr. Moyer's prior TSA and to advise if the restrictions and limitations

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite1230
Phoenix, AZ  85012
(602) 277-1745

in Mr. Braun's report would interfere with Ms. Boyes' ability to perform the prior occupations identified.

91.    Pursuant to Ms. Graham's instruction, Mr. Engel relied on Dr. Braun's proposed restrictions over and to the exclusion of those set forth by Ms. Boyes' providers to ascertain whether another TSA was necessary. Based on Dr. Braun's restrictions and limitations, Mr. Engel concluded, "Boyes would have the capability to perform the occupations identified on the 12/10/13 TSA. Another TSA is not required in this situation since the previous TSA is valid…"

92.    Despite overwhelming medical evidence supporting Ms. Boyes' Disability, Ms. Graham affirmed the decision to terminate Ms. Boyes' LTD benefits. She based her recommendation on Dr. Braun's report and Mr. Engel's vocational assessment.

93.    In a letter dated March 28, 2014, LINA upheld the termination of Ms. Boyes' LTD benefits (the "Second Denial"). In the Second Denial, LINA advised Ms. Boyes that a second appeal request would be accepted and considered if she had different or additional information to submit.

94.    With the assistance of counsel, Ms. Boyes requested relevant information under ERISA. In a letter dated July 22, 2014, Ms. Boyes requested a copy of her entire claim file and all information relevant to her claim. This included all documents that were relied upon in making the benefit determination; were submitted, considered or generated in the course of making the benefit determination without regard to whether it was relied upon in making the benefit determination; demonstrated compliance with the administrative processes and safeguards in making the benefit determination; and constituted a statement of policy or guidance with respect to the Plan concerning her diagnoses. Specifically, she requested a copies of all her medical records, all correspondence to her and to Banner, all medical reviews performed by LINA and its consultants, LINA's internal notes, and the Policy and group insurance contract between Banner and LINA. Ms. Boyes' request was addressed to LINA and also to Banner in its

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

capacity as the Plan Administrator. As the Plan Administrator, Banner was advised that it was responsible for ensuring that Ms. Boyes received all documents relevant to her claim for benefits.

95.     In a separate letter dated July 22, 2014, Boyes also requested copies of the Plan documents from Banner. Among the items requested were the Plan document(s) executed by Banner controlling the operation of the Plan, the Policy, the group insurance contract and/or service contact between Banner and LINA, the Summary Plan Description, the Annual Reports or Form 5500 filings, and the Summaries of Material Modifications for the Plan. This letter was addressed to Banner in its capacity as the Plan Administrator. LINA was copied on the letter.

96.     In response to Ms. Boyes' request for her claim file, LINA disclosed a 935-page file. In the cover letter enclosing Ms. Boyes' file, LINA stated that it had also enclosed a copy of the RBO Policy, however, this was withheld from disclosure.

97.     Banner did not respond to Ms. Boyes' July 22, 2014 letters.

98.     With the assistance of counsel, Ms. Boyes timely submitted her second, voluntary appeal to LINA on or about September 24, 2014 (the "Second Appeal"). With her Second Appeal, Ms. Boyes provided additional evidence for consideration, including but not limited to, a sworn declaration statement about her medical conditions, the May 13, 2013 Regulatory Settlement Agreement (the "RSA") between LINA and various Monitoring and Participating States regarding LINA's disability insurance claims handling practices, and background information regarding LINA's physician reviewers, including Drs. Seiferth and Braun.

99.     In a letter dated October 8, 2014, LINA refused to consider Ms. Boyes' Second Appeal. LINA stated that because the information provided was a copy of Ms. Boyes' administrative file, which was previously reviewed, LINA "could not" consider the information for appeal at that time.

1

2

3

4

5

6

7

8

9

10

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

100.    LINA's refusal to accept and consider Ms. Boyes' Second Appeal was a violation of its fiduciary duties to Ms. Boyes and of ERISA's claims regulations under 29 C.F.R. § 2560.503-1(h)(2)(iv). Under this regulation, an ERISA fiduciary must "[p]rovide for a review that that takes into account all comments, documents, records and other information submitted by the claimant related to claim, ***without regard to whether such information was submitted or considered in the initial benefit determination***." (emphasis added)

101.    Through counsel, Ms. Boyes responded to LINA's October 8, 2014 letter. With her response, Ms. Boyes provided additional medical documentation supporting her continuing disability.

102.    In a letter dated December 4, 2014, LINA finally acknowledged receipt of Ms. Boyes' Second Appeal. LINA advised that a new member of the Appeals Team would contact Ms. Boyes regarding her Second Appeal.

103.    On December 16, 2014, Ms. Boyes' Second Appeal was assigned to Appeals Specialist, Jamille Biggs.

104.    On or about January 5, 2015, Ms. Biggs referred Ms. Boyes' claim for a second Peer Review. As with the first Peer Review, she requested an Occupational Medicine specialist to conduct the Peer Review. Again, the stated rationale for the Peer Review was "Conflicting Medical Information."

105.    In the Vendor Referral Form, Ms. Biggs listed Ms. Boyes' treating providers as Dr. Sahai, Dr. Payne, and Ms. Carolyn DeCarli. With the referral, she provided "Special Instructions." She requested that the Peer Reviewer attempt at least two phone contacts with each provider.

106.    In a letter dated January 8, 2015, Ms. Boyes' counsel addressed her concerns about the Peer Review. Ms. Boyes' counsel reminded LINA that based on the authorizations it had on file, LINA and the Peer Reviewer only had authorization to communicate with her treating providers in writing or by telephone conference arranged

-17-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

through counsel in advance so that it could be properly recorded. Ms. Boyes' counsel advised LINA that to the extent it had already initiated or had already completed "telephonic interviews" with Ms. Boyes' providers, it was acting outside the scope of its authorization.

107.    In that same letter, Ms. Boyes' counsel also renewed her request for the RBO Policy, which had never been disclosed to Ms. Boyes.

108.    On or about January 20, 2015, Ms. Boyes' counsel received the purported Policy from LINA. Instead of the RBO Policy, LINA disclosed a copy of the Samaritan Long-Term Disability Plan Amended and Restated January 1, 1994.

109.    Ms. Boyes' claim was referred to Exam Coordinators Network ("ECN") for the Peer Review.

110.    ECN advertises itself as the leading national provider of medical expert procurement and independent medical review services. It provides a wide array of services to assist clients in managing the cost of medical claims and cases. ECN's clients include insurance carriers, public and private disability insurers, nurse case managers, and risk managers.

111.    ECN assigned Ms. Boyes' claim to Medical Consultant, Dr. Randal Wojciehoski.

112.    On information and belief, Dr. Wojciehoski received his Doctor of Podiatric Medicine ("DPM") degree from the New York College of Podiatric Medicine in New York City, and his Doctor of Osteopathic Medicine ("DO") degree at the University of New England in Biddeford, Maine. After graduating, he completed his residency in internal medicine at the University of Wisconsin-Marshfield Clinic Program in Marshfield, Wisconsin.

113.    Dr. Wojciehoski completed his Peer Review report on or about January 19, 2015. Dr. Wojciehoski's report consists of only four pages, with the majority of the report listing the medical records reviewed.

-18-

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

114.    Dr. Wojciehoski purportedly faxed a request for teleconference on January 13, 2015 to Drs. Sahai and Payne and Ms. DeCarli. Allegedly, "no responses were received with regard to the questions asked." To date, LINA has not produced or disclosed the fax or questions sent to Ms. Boyes' providers.

115.    In his report, Dr. Wojciehoski noted that he received a phone call from Dr. Sahai on January 15, 2015 and that it was her opinion that Ms. Boyes "was unable to function as a registered nurse." Dr. Wojciehoski did not have authorization to speak with Dr. Sahai telephonically.

116.    Dr. Wojciehoski's opinions were conclusory and without substantial support. His opinions were limited to two paragraphs and are provided in their entirety below:

> Based upon the review of the medical records provided as well as the associated documentation, it is my opinion to a reasonable degree of medical probability that Ms. Boyes would be capable of working in sedentary capacity based upon her chronic pain syndrome, fibromyalgia, and generalized joint pain. Dr. Sahai has raised concern with regard to Ms. Boyes [sic] functionality and chronic opioid use, but it is my opinion to a reasonable degree of medical probability that ***Ms. Boyes would benefit from maintaining gainful employment in sedentary capacity on a fulltime basis.***

> It is my opinion to reasonable degree of medical probability that based upon my conversation with Dr. Sahai that ***Ms. Boyes does have functional impairment secondary to her chronic pain, generalized joint pain, and depression***. It is my opinion to reasonable degree of medical probability that Ms. Boyes would be capable of working in sedentary capacity based upon her physical limitations.

(emphasis added)

117.    Relying on Dr. Wojciehoski's report, Ms. Biggs affirmed the prior decision to deny Ms. Boyes' LTD benefits. In her Medical Investigation Results, she noted, "Peer review report completed by Dr. Randal Wojciehoski, Occupational Medicine. P2P contact with Dr. Sahai established. After review of the claim file and teleconference with Dr. Sahai, it has been determined that there is no evidence to support

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

a global impairment that would prevent Ms. Boyes from performing the duties of any occupation, including sedentary work…"

118.    In a letter dated February 13, 2015, LINA upheld the First and Second Denials (the "Final Denial").

119.    In response to LINA's Final Denial, Ms. Boyes' counsel requested all relevant documents under ERISA in a written request dated March 25, 2015. Ms. Boyes requested disclosure of all information relevant to her claim that was submitted, considered or generated by LINA after the Second Denial. She also renewed her request for information specifically requested in her July 22, 2014 letter that had not been disclosed. This included the Plan document, the RBO Policy, and the group insurance contract and/or service contract between Banner and LINA. As with previous requests, Ms. Boyes addressed her letter to both LINA and Banner in its capacity as the Plan Administrator. Again, Banner was advised that as the Plan Administrator it was responsible for ensuring that Ms. Boyes received all documents relevant to her claim for benefits.

120.    Over the years, Ms. Boyes has tried a number of treatments, which have all yielded varying symptom relief. She has tried trigger point injections. She has also been on various doses of Vicodin, Gabapentin, and Cyclobenzaprine, which have helped but do no completely control the pain. Her pain requires her to take Vicodin every four hours for pain relief.

121.    On information and belief, should Ms. Boyes remain eligible for LTD benefits, she could be entitled to receive benefits until she is 65 years old. This would entitled her to benefits until August 27, 2023.

122.    Since her last day worked, Ms. Boyes has remained disabled under the Plan.

123.    Ms. Boyes cannot engage in Any Occupation with reasonable continuity.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

124.    Ms. Boyes continues to be Disabled as defined by the Plan for LTD benefits.

125.    On information and belief, Ms. Boyes is a Covered Person under the RBO Policy, because she was receiving LTD benefits directly from Banner prior to October 1, 2012.

126.    Ms. Boyes exhausted her administrative remedies under the Plan.

127.    Ms. Boyes satisfied all of the jurisdictional prerequisites to filing her claims, and her claims are timely before this Court.

128.    On information and belief, Ms. Boyes may be entitled to additional benefits from Banner as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

## COUNT I
### (Recovery of Plan Benefits)
### (LINA & the Plan)

129.    All previous and succeeding paragraphs are incorporated by reference.

130.    The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.  Defendants are Banner and LINA as the Plan Administrator and/or Plan fiduciaries under ERISA.

131.    The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Boyes is no longer Disabled under the terms of the Plan.

132.    Ms. Boyes became Disabled in 2003 and continues to be Disabled. Due to her medical conditions and the supporting medical evidence, Ms. Boyes would not be able to reliably perform Any Occupation in a satisfactory manner. She has claimed the benefits under the Plan to which she is entitled.

133.    Ms. Boyes reasonably expected that her conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 65 or until she was no longer Disabled.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

134.    Despite the coverage of Ms. Boyes' Disability, LINA improperly terminated Ms. Boyes' LTD benefits in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

135.    LINA's determination that Ms. Boyes was not entitled to LTD benefits was influenced by an improper conflict of interest.

136.    On information and belief, LINA was motivated to terminate Ms. Boyes' claim, in part, because it was insured under a RBO Policy. LINA's internal records were peppered with notes and references to her claim being an "RBO claim" and "no products" claim, which meant that LINA was not expecting any further premiums or fees from Banner and that Banner did not have any other insurance products with LINA. When LINA first initiated Ms. Boyes' claim, it tagged her claim as a "takeover claim."

137.    Because LINA had already received the one time, $14,022,000 premium from Banner to insure claims under the RBO Policy, LINA had no financial incentive to pay Covered Persons under the RBO Policy, including Ms. Boyes.

138.    In terminating Ms. Boyes' LTD benefits, LINA ignored credible medical evidence, which supported her continuing eligibility for benefits. LINA ignored critical medical records, letters from her treating providers, and other relevant information supplied during the administrative appeal process, including sworn declaration statements, background information about LINA's physician reviewers and LINA's RSA.

139.    LINA failed to meaningfully address or consider Ms. Boyes' SSDI award, alleging that it had received medical documentation after her award, which did not support her Disability. However, the only evidence which supported LINA's position of non-disability were the reviews it had secured from biased peer review companies. Ms. Boyes' conditions had not changed. LINA made no attempt to reconcile its decision with the prior findings of Disability.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

140.    Ms. Boyes provided objective medical evidence that was consistent with her complaints and supported Disability.

141.    Given Ms. Boyes' declining health, she cannot engage in Any Occupation, sedentary or otherwise.

142.    LINA acted arbitrarily and capriciously when it selectively reviewed Ms. Boyes' medical records, relying only on those portions of her medical records that supported a denial of benefits. LINA unreasonably disregarded medical evidence in Ms. Boyes' file.

143.    On information and belief, LINA handled Ms. Boyes' claim in an adversarial manner and failed to administer the Plan prudently and in Ms. Boyes' best interests.

144.    On information and belief, the peer reviewers and LINA's employees were financially incentivized to deny Ms. Boyes' claim. This includes LINA's AMD, Dr. Seiferth, and LINA's peer reviewers, Drs. Braun and Wojciehoski.

145.    The peer reviewers secured by LINA, including but not limited to Drs. Braun and Wojciehoski, are biased for insurance companies and acted with bias in conducting their respective peer reviews.

146.    On information and belief, Dr. Braun has a history of bias against claimants, which impacted the objectivity and reliability of his review of Ms. Boyes' claim.

147.    On information and belief, Drs. Braun and Wojciehoski have been retained by LINA on numerous occasions to conduct medical records and/or peer reviews.

148.    LINA's peer reviewers contradicted one another, intentionally misstated the medical evidence, and also intentionally misstated the assessments of Ms. Boyes' treating providers.

149.    LINA's peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

-23-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ  85012
(602) 277-1745

150.    Drs. Braun and Wojciehoski did not have a reasonable basis for their recommended restrictions and limitations. They did not personally examine Ms. Boyes nor did they perform their due diligence with respect to getting proper clarification from Ms. Boyes' treating providers.

151.    Ms. Boyes' ability to write a five-page appeal does not demonstrate her ability to work in Any Occupation, and LINA's reliance on Dr. Braun's conclusions of this demonstrates LINA's malicious, adversarial claims handling.

152.    LINA and its peer reviewers cherry-picked Ms. Boyes' medical records to create a selective and incomplete rendition of Ms. Boyes' medical history.

153.    LINA and its peer reviewers improperly failed to consider Ms. Boyes' subjective complaints, as well as the effect of her medications, in determining whether she was disabled under the Plan.

154.    LINA failed to explain why it credited its peer reviewers over Ms. Boyes' treating physicians and unreasonably relied on the peer reviewers' reports when it knew they had conducted inadequate reviews.

155.    LINA unreasonably credited unreliable evidence over reliable evidence in its administration and review of Ms. Boyes' claim, making its determination contrary to the clear weight of the medical evidence.

156.    Aware that Ms. Boyes' claim was insured under a RBO Policy, LINA handled Boyes' claim in an adversarial manner and failed to administer the claim in Ms. Boyes' best interests.

157.    LINA deliberately conducted a biased investigation. It avoided and unreasonably failed to review all of the medical evidence fully and fairly. It further selected reviewers whom it knew to be unreasonable and unqualified to evaluate Ms. Boyes' claim, misrepresented facts to those reviewers, and obtained reviewers from vendors known to provide biased reviews. This included but is not limited to LINA's retention of peer reviewers from PDA and ECN.

-24-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

158.    PDA and ECN are companies known to demonstrate bias against claimants and to act in the best interests of their clients, the insurance companies.

159.    LINA used personnel and peer reviewers who lacked adequate training and experience to evaluate Ms. Boyes' claim.

160.    PDA and ECN frequently provide insurance companies, including LINA, with reviews that are favorable for the denial of claims.

161.    LINA knew or should have known that PDA and ECN are biased companies.

162.    On information and belief, as a company-wide practice, LINA uses PDA and ECN, because it knows that PDA and ECN provide reviews that are favorable to the denial of claims.

163.    LINA used PDA and ECN in Ms. Boyes' claim, because it knew that the reviews would be unfavorable for the continuation of Ms. Boyes' benefits.

164.    LINA unreasonably failed to ensure that PDA and ECN provided unbiased and/or qualified reviewing doctors for purposes of its claims administration.

165.    LINA unreasonably refused to consider Ms. Boyes' subjective complaints in violation of the Plan.

166.    LINA produced incomplete claims procedure guidelines and failed to indicate which procedures were relied upon in its termination of Ms. Boyes' LTD benefits.

167.    LINA intentionally and in bad faith withheld relevant information in violation of ERISA, which includes but is not limited to, a copy of the RBO Policy, the internal rules or guidelines used by LINA in evaluating Ms. Boyes' claim and conditions, and the procedures designed to mitigate LINA's structural conflict of interest and to verify that the determinations are made with the correct and governing Plan documents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

168.    Under ERISA, LINA had an obligation to disclose all documents "relevant" to Ms. Boyes' claim for benefits. Under 29 C.F.R. § 2560(m)(8), a document is "relevant" to a claim if it: 1) was relied upon in making the benefit determination; 2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; 3) demonstrates compliance with the administrative processes and safeguards in making the benefit determination; or 4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination. Under ERISA, this necessarily contemplated disclosure of the RBO Policy and other documents outlined above.

169.    Because of LINA's improper actions, Ms. Boyes was denied a full and fair review of her claim.

170.    LINA's procedural irregularities include but are not limited to: behaving as an adversary bent on denying the claim; impermissibly "cherry picking" only evidence favorable to LINA from Ms. Boyes' claim file; retaining biased physician reviewers, who either were unqualified to comment on Ms. Boyes' conditions, or otherwise conducted the bare minimum for their reviews; failing to credit Ms. Boyes' subjective complaints and improperly demanding objective evidence.

171.    In the event that Banner properly delegated LINA with discretionary authority, LINA's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Ms. Boyes to *de novo* review with a bench trial on the record.

172.    If LINA is entitled to review under an abuse of discretion standard, this Court should review LINA's decision with heavy skepticism, because there is ample

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

evidence of LINA's malice, self-dealing, and biased claims handling as a result of its conflicted status.

173.   LINA had a significant financial conflict of interest with respect to handling, monitoring, and eventually denying Ms. Boyes' LTD benefits.

174.   On information and belief, LINA has not established any safeguards to insulate its decision-making process against its significant structural conflict of interest.

175.   Because LINA had already received the one-time fixed premium, Ms. Boyes is informed and believes LINA managed her claim with the intent to terminate her LTD benefits.

176.   LINA's bad faith and structural conflict is also evidenced in part by its many procedural irregularities and failure to provide timely and adequate disclosures. The record supports that LINA placed its financial interest above Ms. Boyes' best interests in administering her claim.

177.   Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Ms. Boyes is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

178.   Ms. Boyes is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

179.   Ms. Boyes is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

180.   Pursuant to 29 U.S.C. § 1132(g), Ms. Boyes is entitled to recover her attorneys' fees and costs incurred herein from LINA.

181.   Ms. Boyes is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ  85012
(602) 277-1745

**COUNT II**
**(Statutory Penalties)**
**(Banner)**

182.　All previous paragraphs are incorporated by reference.

183.　Pursuant to 29 U.S.C. § 1132(c)(1)(B), "any administrator who fails to comply with a request for any information which such administer is required by this subchapter to furnish to a participant or beneficiary… may in the court's discretion be personally liable to such participant or beneficiary."

184.　Under 29 U.S.C. §1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

185.　On July 22, 2014, Ms. Boyes made a written request exclusively to Banner seeking disclosure of the governing plan documents under ERISA. Among some of the information requested, she requested the Plan Document executed by Banner controlling the operation of the Plan, the RBO Policy, Banner's 5500 Filings, and Summaries of Material Modifications for the Plan.

186.　In the July 22, 2014 letter, Ms. Boyes' counsel specifically requested that if Banner refused to disclose any of the requested information, it provide an explanation as to why it believed the information was exempted from its disclosure obligations under ERISA.

187.　In a separate letter dated July 22, 2014, which was addressed to LINA and Banner, Ms. Boyes enumerated her request for her Plan documents including, but not limited to, the RBO Policy, Certificate of Insurance, Plan Booklet, group insurance contract and/or service contract between LINA and Banner.

188.　After LINA's Final Denial, Ms. Boyes sent another request to LINA and Banner dated March 25, 2015. Ms. Boyes renewed her request for information, which

-28-

was previously requested and had not been disclosed. As the Plan Administrator, Banner was advised that it was responsible for ensuring that Ms. Boyes received all document relevant to her claim. This request contemplated the RBO Policy.

189. On April 10, 2015, LINA provided a disclosure totaling 1,143 pages. In the cover letter enclosing Ms. Boyes' file, LINA represented that it had provided a copy of the RBO Policy, but this was in fact, withheld.

190. On May 15, 2015, Ms. Boyes' counsel received a voice message from Banner's general counsel, Cyrus Martinez, advising that he was in the process of gathering a response with respect to Ms. Boyes' requests. He apologized for the delay.

191. To date, Ms. Boyes has not received her Plan documents from Banner.

192. Banner failed or refused to comply with its disclosure obligations under 29 U.S.C. § 1024(b).

193. On information and belief, Banner purposely and in bad faith withheld information that Ms. Boyes was legally entitled to under ERISA.

194. Banner acted in bad faith and with prejudice by failing to disclose relevant documents under ERISA in response to Ms. Boyes' written requests.

195. The undisclosed information was critical to Ms. Boyes' claim and appeals for benefits, and Ms. Boyes has been prejudiced by Banner's failure to disclose information under ERISA.

196. The disclosure requirements of ERISA are not empty suggestions for fiduciaries such as Banner. The disclosure requirements amount to specific guidelines imposed for the purpose of ensuring that plan participants, such as Ms. Boyes, can follow and gauge the availability and character of ERISA plans, including the very structure of the benefit plan itself. Without adequate disclosure, Ms. Boyes cannot know or enforce her rights to benefits or anticipate alterations in benefits under the Plan.

197. As the Plan Administrator, Banner is liable to Ms. Boyes for its failure to properly disclose documents pursuant to 29 U.S.C. § 1132, et. seq.

-29-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

198. Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day for each day that Banner failed to provide a complete and proper disclosure of Ms. Boyes' plan documents.

199. Penalties began to accrue thirty (30) days after the date Ms. Boyes made a written request to Banner for her plan documents, which is August 22, 2014.

200. Boyes is entitled to penalties, as well as interest, costs, and her attorneys' fees.

201. Banner continues to accrue penalties under ERISA until it properly discloses requested documents pursuant to ERISA.

## COUNT III
## (Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(2))
## (LINA)

202. All previous paragraphs are incorporated by reference.

203. LINA owes fiduciary duties to the Plan.

204. Ms. Boyes has reason to believe that LINA breached its fiduciary duties to the Plan and that the Plan has and will continue to be injured as a result of LINA's conflicted and unchecked claims handling.

205. LINA's breaches injured the Plan, jeopardized the Plan or put at risk Plan assets. The Plan as a whole incurred an injury as a result of LINA's breaches of its fiduciary duties.

206. Ms. Boyes is informed and believes that after LINA acquired the block of existing claims from Banner, it targeted those claims for termination. It had already received the $14,022,00 premium and was not expecting further premiums or payments from Banner. Furthermore, after assuming liability for the RBO claims, LINA knew that Banner's involvement in the administration and oversight of those claims would be limited or non-existent. Ms. Boyes is informed and believes that LINA had no incentive pay valid claims insured under the RBO Policy, and LINA breached its fiduciary duties by acting directly against the Plan for its own gain.

-30-

207.    The Plan was harmed because it paid a $14,022,00 premium for otherwise illusory coverage. In exchange for this premium, LINA agreed to accept and to insure all of Banner's existing claims, including Ms. Boyes. Ms. Boyes is informed and believes that it was not Banner's intention to transfer claims for termination.

208.    LINA was unjustly enriched as a result of its breach of fiduciary duty violations to the Plan, because it wrongfully terminated and withheld benefits for its own profit.

209.    Ms. Boyes has reason to believe that LINA's claim statistics with respect to the RBO Policy will reveal LINA's intent. Other cases insured under the same RBO Policy and presenting similar facts are currently pending in the Arizona District Court.

210.    Ms. Boyes it entitled to seek relief on behalf of the Plan under § 1132(a)(2), because it may be the only avenue for holding LINA accountable to the Plan in equity.

211.    ERISA "does not elsewhere adequately remedy" the injuries caused to the Plan by LINA's breach of fiduciary duty violations.

212.    On information and belief, an injunction to LINA's claims handling practices with respect to claims insured under the RBO Policy will significantly inure to the benefit of the Plan.

213.    When Banner entered into the RBO contract with LINA, LINA already had a demonstrated history of biased claims handling. At the time of the contract, LINA was the subject of several state insurance investigations, which finally resulted in the 2013 RSA.

214.    Based on Cigna's 2012 Annual Report, the profitability of LINA's disability products depends on the adequacy of premiums charged and investment returns relative to claims and expenses. Without the promise of future premiums and having already secured a large premium from Banner, Ms. Boyes is informed and believes that LINA's profitability goals directly influenced its handling of all claims

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

insured under the RBO Policy under the Plan. Against this backdrop, LINA was also faced with significant operating expenses for the administration of these claims.

215.  On information and belief, as an institution, LINA uses claim payment reduction goals and cost containment measures as a method of profitmaking for the company. In doing so, LINA unfairly and arbitrarily reduces or denies payments on legitimate claims in an across-the-board fashion to attain its numerical reduction goals. LINA's cost containment measures are consistent with and a part of a corporate-wide plan and scheme.

216.  On information and belief, LINA does not have proper safeguards to ensure that its focus on profitability does not affect how its employees handled, evaluated, and assessed claims.

217.  On information and belief, LINA offers incentive or bonus programs to award and to encourage employees to meet its savings and operational goals.

218.  On information and belief, LINA instructs and/or incentivizes its employees to terminate otherwise legitimate RBO claims.

219.  On information and belief, LINA's RBO policy designation is used as an internal claims guideline to manage claims based on LINA's profit goals.

220.  LINA has a demonstrated history of biased claims handling. It has a pattern and practice of engaging in unfair claims practices, which is evidenced by the 2013 RSA.

221.  On May 13, 2013, LINA entered into the RSA with five state insurance regulators for its claims handling practices related to group LTD insurance policies.

222.  The RSA resulted from individual examinations by the insurance departments of California, Connecticut, Maine, Massachusetts, and Pennsylvania (the "Monitoring States").

223.  Under the RSA, LINA was assessed with penalties and fees totaling $1,675,000 to the Monitoring States.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

224.    Under the RSA, LINA was also required to establish a remediation program for the redetermination of certain previously denied or adversely terminated claims. LINA was required to set aside $77 million for projected payments to claimants under the remediation program.

225.    LINA was also ordered to participate in a 24-month monitoring program involving random sampling and ongoing consultation. Upon completion of the monitoring period, LINA is subject to re-examination, and upon material non-compliance, may be subject to additional fines and/or penalties.

226.    On behalf of the Plan, this Court should enjoin LINA as most appropriately determined upon further discovery, as well as provide other equitable relief this Court deems appropriate.

**COUNT IV**
**(Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(3))**
**(LINA)**

227.    All previous paragraphs are incorporated by reference.

228.    Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress violations of ERISA or the plan.

229.    Under ERISA, a fiduciary owes a special duty of loyalty to the Plan and its Participants. Under 29 U.S.C. § 1104(a)(1)(A), a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

230.    ERISA also requires a fiduciary to discharge its duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aim.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

231.    LINA owed fiduciary duties to Ms. Boyes, and breached those duties by acting directly against Ms. Boyes' interests for its own gain. LINA failed to administer the Plan prudently and in Ms. Boyes' best interests. It failed to present the medical facts accurately and failed to provide a fair and reasonable evaluation, which considered all available medical evidence, both objective and subjective, that supported impairment.

232.    On information and belief, LINA's conduct was motivated by financial considerations, caused by its structural conflict of interest as both decision maker and payer of Ms. Boyes' LTD benefits. LINA has failed to produce any evidence that it protected Ms. Boyes from its conflict and instead intentionally withheld information that would have otherwise revealed the depth of its self-interested conduct.

233.    ERISA does not elsewhere adequately remedy the injuries caused to Ms. Boyes by LINA's breach of fiduciary duty violations.

234.    For LINA's conduct, Ms. Boyes is entitled to equitable relief, which could take the form of injunctive or mandamus relief. The Court could order LINA to comply with the enhanced claims procedures established by the RSA, which it violated throughout the administration of Ms. Boyes' claim. It could also enjoin LINA from employing and/or relying on Peer Reviews to determine a claimant's functionality, where a claimant's functionality is in dispute, the Peer Reviewer does not afford the claimant's providers sufficient time to respond or to clarify questions about the claimant's functionality, and LINA has the option and authority to conduct an IME and/or FCE, which would provide better insight into a claimant's true function given that it is based on an in-person examination.

235.    Based on its prior conduct, LINA agreed to a plan of corrective action under the RSA, which included the adoption of enhanced claim procedures.

236.    The enhanced claim procedures are aimed at improving the claims handling process and ensuring full and fair evaluations of insureds' eligibility for and entitlement to disability benefits.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

237.    Enhanced claim procedures were established and provided in Exhibits B, C, and D of the RSA.

238.    Exhibits C and D of the RSA outline procedures for gathering medical information and using external medical resources. Under these procedures, relevant medical documentation should be drawn from multiple sources and should be given proper consideration.  Relevant medical documentation, includes but is not limited to, medical records from treating providers, medical texts, articles, and other publications, the claimant's own statements, and observations of the claimant's activities.

239.    The procedures outline that when LINA's opinion regarding the claimant's functionality differs from the claimant's treating provider, contact with the treating provider should be made to clarify functional discrepancies. Contact can be made either by phone or by letter requesting clarification. If telephone contact cannot be arranged, a letter outlining the question(s) and issues should be sent to the treating provider, which invites a reply either by phone or by letter.

240.    If these efforts do not resolve questions of functional status and level of impairment, the use of external resources, such as an Independent Medical Examination ("IME") and/or Functional Capacity Evaluation ("FCE"), should be considered and/or employed to gain further understanding of the claimant's functional capacity. IMEs and FCEs should be ordered when there are disputed or unclear medical conditions, functional status, or levels of impairment. A Peer Review may also be considered, but should be reserved only where there is an issue of data interpretation and an in-person examination of a claimant would not be useful to understand the cause and nature of impairment.

241.    An IME or FCE of the claimant should be sought whenever there is lack of agreement and the opinion of the company's internal medical resource is the primary basis for the denial or termination of benefits.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

242.    With respect to Ms. Boyes' claim, LINA failed to follow the enhanced claims procedures outlined under the RSA.

243.    LINA ignored credible evidence, which was supplied during the administrative appeals process, including Ms. Boyes' Second Appeal. During this process, Ms. Boyes provided updated medical records, articles and literature about her conditions, and sworn testimony regarding her functionality and difficulties with her activities of daily living.

244.    LINA did not seek proper clarification from Ms. Boyes' treating providers. Where it did reach out to Ms. Boyes' providers, it did not provide sufficient time for them to respond nor did it contact Ms. Boyes or her counsel to facilitate a timely response. Despite several reminders from counsel, LINA communicated with Ms. Boyes' providers telephonically. This was outside the scope of the authorizations it had in file and was in disregard of Ms. Boyes' instruction.

245.    LINA never referred Ms. Boyes' claim for an IME or FCE. Throughout her claim, LINA consistently noted that Ms. Boyes' functional loss was "unclear" and that there were conflicting medical opinions. Rather than getting proper clarification, LINA referred Ms. Boyes' claim for a Peer Review despite noting there were conflicting medical opinions. Based on the RSA's enhanced claims procedures, a Peer Review should only be considered where an in-person examination would not be useful.

246.    On information and belief, LINA had the authority to order an IME or FCE.

247.    LINA owed a duty of loyalty to Ms. Boyes but instead acted with bad faith, which constitutes a violation of its fiduciary duty. Ms. Boyes is informed and believes that LINA managed her claim with the intent to deny her claim in order to avoid financial liability. The duty of loyalty prohibits LINA from favoring its own interests over Ms. Boyes.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

248.    Under ERISA, a plan administrator and/or insurance company engages in a fiduciary act when making a determination about whether a claimant is entitled to benefits under the terms of the plan.

249.    LINA arbitrarily and capriciously denied Ms. Boyes benefits, which constitutes a breach of fiduciary duty.

250.    In addition to injunctive and/or mandamus relief, Ms. Boyes may be found to be entitled to surcharge as a result of the actual harm she suffered. As a result of LINA's breaches, Ms. Boyes was financially devastated. Although she only received $577/month from LINA, that income was important. Without it, she cannot afford her medical copays. As a result, she has had to forego routine medical check ups, colonoscopies and treatments. She has had to borrow money from her family members for groceries and basic necessities and repairs. She has depleted all of her savings and has accrued significant credit card debt.

251.    Surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

252.    In equity, the Court could make Ms. Boyes whole following LINA's breach and mold the relief to protect the rights of the beneficiary. The Court has broad discretion to fashion appropriate relief.

253.    On behalf of the Plan, this Court should enjoin LINA as most appropriately determined upon further discovery, as well as provide other equitable relief this Court deems appropriate.

254.    On information and belief, separate equitable relief may be appropriate under 29 U.S.C. § 1132(a)(3), because 29 U.S.C. § 1132(a)(1)(B) is inadequate for recovery.

255.    ERISA does not elsewhere adequately remedy the injuries caused to Ms.

-37-

Boyes by LINA's breach of fiduciary duty violations. Even if Ms. Boyes were to recover the benefits due to her under 29 U.S.C. § 1132(a)(1)(B), there would be nothing estopping LINA from engaging in the same bad faith claims practices that it has already been scrutinized for based on the RSA. This is especially true if Ms. Boyes' claim is remanded back down to LINA for a determination regarding future benefits.

256. Ms. Boyes is entitled to equitable relief for LINA's breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for LINA.

257. Because LINA breached its fiduciary duties, Ms. Boyes was actually harmed.

258. Pursuant to 29 U.S.C. § 1132(g), Ms. Boyes is entitled to recover her attorneys' fees and costs incurred herein from LINA.

259. LINA must return any benefits or profits resulting from its breach to Ms. Boyes.

260. Banner acted imprudently by failing to oversee LINA's claims administration especially with respect to claims insured under the RBO Policy. As the continuing Plan Administrator, Banner knew or should have known that LINA handled claims against the best interests of its employees and not pursuant to the Plan.

261. On information and belief, Banner received notifications from LINA for each claim terminated under the RBO Policy, including Ms. Boyes. For instance, on the date of each adverse benefit determination, including the First, Second and Final Denials, LINA issued a letter to Banner advising of the termination and affirmation of its decisions on Ms. Boyes' claim. Ms. Boyes is informed and believes that Banner received similar notices with respect to other Covered Persons insured under the RBO Policy and was aware of LINA's actions.

262. On information and belief, Banner, as the Plan Administrator, did not periodically review LINA's actions as a purported delegated fiduciary under the Plan.

-38-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite1230
Phoenix, AZ 85012
(602) 277-1745

263.    On information and belief, Banner's failure to periodically review LINA's actions as a delegated fiduciary under the Plan was unreasonable and constituted a breach of fiduciary duty.

264.    On information and belief, if Banner did periodically review LINA's actions as a delegated fiduciary under the Plan, then its periodic review was unreasonable and constituted a breach of fiduciary duty.

265.    On information and belief, Banner is liable for LINA's actions, because Banner violated its fiduciary obligations by failing to protect the Plan and Plan Participants from LINA's conflicted, unchecked and adversarial claims handling.

266.    On information and belief, Banner knew or should have known that LINA improperly handles claims insured under the RBO Policy in an effort to avoid financial liability on LTD claims.

267.    As a direct and proximate result of LINA and Banners' breaches of fiduciary duty, Ms. Boyes has suffered actual financial harm and incurred financial expenses.

268.    Ms. Boyes is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(3). She is entitled to enjoin any act or practice by LINA and Banner that violates ERISA or the Plan, and she is entitled to see other appropriate equitable relief that is traditionally available in equity.

269.    Because of LINA's breach of fiduciary duties to the Plan and its participants, and because of Banner's failure to appropriately monitor LINA and protect Plan participants and beneficiaries from LINA's breaching conduct, Banner should be required to implement appropriate procedures in oversight of LINA, which will maintain accountability for the administrative responsibilities it delegates under the Plan.

270.    Ms. Boyes is entitled to equitable relief for Defendants' breaches of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

271.    Ms. Boyes relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan.

272.    LINA must return any benefits or profits resulting from its breach to Ms. Boyes.

273.    Ms. Boyes was harmed by Defendants' breaches of their fiduciary duties.

274.    Ms. Boyes is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

275.    Pursuant to 29 U.S.C. § 1132(g), Ms. Boyes is entitled to recover her attorneys' fees and costs incurred herein from LINA and Banner.

276.    On information and belief, separate equitable relief may be appropriate under 29 U.S.C. § 1132(a)(3), because 29 U.S.C. § 1132(a)(1)(B) is inadequate for recovery.

WHEREFORE, Ms. Boyes prays for entry of judgment against Defendants as follows:

A.    For all past LTD benefits under the terms of the Plan;

B.    Clarifying and determining her rights to future benefits under the terms of the Plan;

C.    For all other equitable relief that is proper as a result of Defendants' breach of fiduciary duties;

E.    For an award of Ms. Boyes' attorneys' fees and costs incurred herein;

F.    For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

G.    For such and further relief as the Court deems just and reasonable.

1

2      Dated this <u>8th</u> day of December, 2015.

3                              OBER & PEKAS, PLLC

4

5                              By: s/ Kristin Cox
                                    Kristin Cox
6                                   Erin Ronstadt
                                    Attorneys for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745